IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| IN RE | ) |
| JERALD H. ARNOLD, | ) CASE NO. 07-80636-G3-11 |
| Debtor, | ) |

## MEMORANDUM OPINION

The court has held a hearing on confirmation of the Debtor's First Amended Plan of Reorganization (Docket No. 211). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered denying confirmation. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

### Findings of Fact

Jerald H. Arnold ("Debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on December 3, 2007. On February 1, 2008, Debtor moved to convert the instant case to a case under Chapter 11 of the Bankruptcy Code. (Docket No. 54). Debtor's motion to convert was granted, by order entered February 7, 2008. (Docket No. 60).

Prior to January, 2009, Debtor's primary business was the operation of rental real property. Debtor testified that,

beginning in January, 2009, he has income from a construction business. Debtor testified that he received $1,045.50 per month in Social Security income.

In the instant Chapter 11 plan, Debtor identifies 27 classes of claims: one class of administrative expenses, two claims (in separate classes) secured by Debtor's homestead, 14 claims (in separate classes) secured by 14 different rental properties, three claims (in separate classes) secured by two vehicles and a sailboat, one class of priority tax claims, one class of unsecured claims, a convenience class with unsecured claims under $250, and four classes of secured tax claims.[1]

With respect to the claims secured by Debtor's homestead, Debtor proposes to retain the homestead. Debtor designates the first lien claim of Citi Residential Lending as unimpaired. Debtor asserts that the second lien claim of Resurgent Capital Services is unsecured in its entirety. Debtor proposes that this claim be treated as an unsecured claim in Class 6.[2]

---

[1] The plan does not identify the property subject to the tax lien claims.

[2] The court notes that, despite Debtor's designation of this class as unimpaired, Debtor testified that he is behind in the payments on his home mortgage.

With respect to 12 of the 14 claims secured by rental real property,[3] Debtor proposes to cram down each such claim to a value he represents to be the value of the property as determined by the Galveston Central Appraisal District.  Debtor proposes to make monthly cash payments on the reduced claims, with an interest rate of six percent, for 30 years from the effective date of the plan.  Debtor proposes to surrender the other two rental properties[4] to the respective lenders, in full satisfaction of their secured claims.

With respect to the claims secured by the two vehicles and the sailboat, Debtor proposes to pay the claims pursuant to the loan documents, and has designated the classes addressing those claims as unimpaired.

With respect to Class 6, the class of unsecured claims, Debtor proposes to pay a pro rata share of $5,000, to be paid one year after the effective date of the plan.

The plan proposes that Debtor will act as the disbursing agent.

In support of confirmation, Debtor presented his own testimony, and that of Scott Johnson, a loan officer and real estate broker.

---

[3]These are classes 3A, 3B, 3C, 3D, 3E, 3F, 3G, 3H, 3I, 3J, 3L, and 3M.

[4]Classes 3K and 3N.

Johnson testified that he believes an interest rate of six percent is reasonable, for a consensual loan modification for a loan to a purchaser of an owner-occupied property. He testified that he is unable to express an opinion as to a reasonable interest rate in a nonconsensual transaction.

Debtor's testimony addressed the conduct of the instant case, the operations of Debtor's business, and the other income Debtor receives. With respect to the conduct of the instant Chapter 11 case, Debtor testified that he has filed monthly operating reports, and has paid quarterly fees to the United States trustee. With respect to good faith, Debtor testified that he believes he filed the instant plan in good faith because he "wants to keep, save the properties."

With respect to the conduct of Debtor's business, Debtor testified that, in order to make the payments called for under the plan to the lenders secured by Debtor's rental properties, Debtor must pay $11,443.09 per month. He testified that he believes the value of each of the properties is the value appraised by the Galveston Central Appraisal District. He testified that he believes, based on his experience as a lessor of real property and as a real estate broker, that values of real property are declining. He testified that he believes the creditors whose claims are secured by the rental property will receive more under the plan than they would receive in a

foreclosure sale of the property securing their claims.

Debtor testified that a chart on the last page of Debtor's first amended disclosure statement is correct: Debtor received monthly revenue on the rental real properties, in the time period from June, 2007 through August, 2008 in a range from $3,365.00 to $11,102.00. The average of these monthly revenues is $7,286.67.[5]

Debtor's monthly operating reports reflect total revenues for Debtor (including Debtor's Social Security income) of $5,668 in October, 2008, $3,000 in November, 2008, $19,075 in December, 2008,[6] and $1,467 for January, 2009.

Debtor testified that he has additional income from operation of a construction business, beginning in January, 2009. He testified that he anticipates receiving $4,500 in March, 2009, $4,000 in April, 2009, $3,400 in May, 2009, and $1,200 in June, 2009 from operation of this business.

Debtor presented a chart addressing Debtor's anticipated income and expenses from operation of the rental properties (at the reduced amounts proposed under the plan), operation of Debtor's construction business, Debtor's Social

---

[5] The court notes that the chart in the first amended disclosure statement also includes the month of September, 2008, with an amount of $664.00. The court takes judicial notice that Hurricane Ike produced significant damage in the Texas Gulf Coast area during September, 2008.

[6] This amount includes $14,500 in income for "repair."

Security income, his household expenses, and the payments to be made under the plan. (Debtor's Exhibit 4).

Debtor testified that, in January, 2009, he rented six of the previously-vacant properties. He testified that two of the properties he rented were those located at 1414 Bayshore Dr. and 2114 17th Ave. N., properties which in the chart in Debtor's Exhibit 4 showed a negative net income. Debtor did not address in his testimony the effect of the renting of these two properties on the numbers contained in Debtor's Exhibit 4.

Debtor's counsel argued that he has received ballots rejecting the plan from creditors in classes 3B, 3C, 3D, and 3F, and one ballot accepting the plan in the convenience class, Class 7. He argued that he had received an email which would appear to indicate that Class 8A would accept the plan. Debtor made no evidentiary presentation with respect to the ballots, and Debtor's evidence did not address any issues other than those identified above.

Countrywide Home Loans Servicing, LP ("Countrywide") filed a ballot rejecting the plan as to Class 3D, and any unsecured portion of the claim in Class 6. (Docket No. 260).

American Home Mortgage Servicing, Inc. ("AHM") filed ballots rejecting the plan as to Class 3C, and any unsecured portion of the claim in Class 6 (Docket No. 262), and as to Class 3B and any unsecured portion of the claim in Class 6 (Docket No.

6

264).

Countrywide objects to confirmation, on grounds the plan is not feasible, the plan reduces the interest rate to an unreasonably low amount, the plan reduces the collateral in Class 3D to an amount less than the market value of the collateral, the plan is not fair and equitable as to the Class 3D claim, that the plan violates the absolute priority rule, and that the plan does not provide for the submission of all of Debtor's disposable income to payments to unsecured creditors under the plan. Countrywide also objects on grounds the plan restricts the imposition of an escrow for taxes and insurance, thereby diminishing Countrywide's claim. Countrywide also asserts that the plan unreasonably discriminates, by providing $9,602.40 in adequate protection payments on the claim in Class 3G in addition to the cramdown value. (Docket No. 259)

AHM objects to confirmation asserts the same arguments raised by Countrywide, as to the claims in Classes 3B, 3C, 3I, and 3J (Docket Nos. 261, 263, 266, and 268). With respect to the claims in Classes 3I and 3J, AHM also objects on grounds the plan is not fair and equitable because Debtor proposes to retain property despite defaulting on agreed orders conditioning the automatic stay with respect to the properties securing each of those two claims. (Docket Nos. 266, and 268).

Conclusions of Law

Section 1129 of the Bankruptcy Code provides in pertinent part:

> (a) The court shall confirm a plan only if all of the following requirements are met:
>
> (1) The plan complies with the applicable provisions of this title.
>
> (2) The proponent of the plan complies with the applicable provisions of this title.
>
> (3) The plan has been proposed in good faith and not by any means forbidden by law.
>
> (4) Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.
>
> (5)(A)(i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and
>
>> (ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and
>
> (B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.
>
> (6) Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate

change provided for in the plan, or such rate change is expressly conditioned on such approval.

(7) With respect to each impaired class of claims or interests--

    (A) each holder of a claim or interest of such class--

        (i) has accepted the plan; or

        (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; or

    (B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

(8) With respect to each class of claims or interests--

    (A) such class has accepted the plan; or

    (B) such class is not impaired under the plan.

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that--

    (A) with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the

9

allowed amount of such claim;

(B) with respect to a class of claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, each holder of a claim of such class will receive--

>   (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

>   (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;

(C) with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim regular installment payments in cash--

>   (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

>   (ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and

>   (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b)); and

(D) with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in subparagraph

(C).

(10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

(11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

(12) All fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan.

(13) The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of this title, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of this title, at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits.

(14) If the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.

(15) In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan--

    (A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

    (B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

  (16) All transfers of property of the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

(b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

  (2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

    (A) With respect to a class of secured claims, the plan provides--

      (i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

      (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a

        value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

        (ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

        (iii) for the realization by such holders of the indubitable equivalent of such claims.

    (B) With respect to a class of unsecured claims--

        (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

        (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.

    (C) With respect to a class of interests--

        (i) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest

>>of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or
>>
>>(ii) the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

11 U.S.C. § 1129.

A bankruptcy court must hold an evidentiary hearing in ruling on confirmation. At this hearing, in addition to the consideration of objections raised by creditors, the court has a mandatory independent duty to determine whether the plan has met all of the requirements necessary for confirmation. Matter of Williams, 850 F.2d 250 (5th Cir. 1988).

The plan proponent has the burden of proof as to compliance with Section 1129(a) by a preponderance of the evidence. In re Briscoe Enters., Ltd. II, 994 F.2d 1160 (5th Cir. 1993), cert. den., 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993).

Debtor presented no evidence to support findings as to the plan and plan proponent's compliance with the applicable provisions of the Bankruptcy Code, the nature of Debtor's compensation for his service as disbursing agent under the plan, the presence or absence of any governmental regulatory commission with jurisdiction over Debtor's rates, the acceptance or

14

rejection of the plan by impaired classes entitled to vote, the presence or absence of retiree benefits owed by Debtor, or the Debtor's projected disposable income.  Thus, the court concludes that, by virtue of presenting no evidence, Debtor has failed to meet his burden of proof with respect to compliance with Sections 1129(a)(1), 1129(a)(2), 1129(a)(5)(B), 1129(a)(6), 1129(a)(7), 1129(a)(8), 1129(a)(10), and 1129(a)(13).[7]

With respect to good faith, Debtor's testimony that he believes the plan was proposed in good faith because he wants to retain the properties is uncontroverted.  However, such testimony, standing alone, does not support a conclusion that the plan was proposed in good faith.  There is no additional evidence to establish that the plan was filed in good faith.  The court concludes that Debtor has failed to meet his burden of proof with respect to compliance with Section 1129(a)(3).

With respect to Section 1129(a)(7), there is no evidence on the question of whether the value, as of the effective date, of property the creditors in impaired classes are to receive under the plan, is not less than the amount that each such holder would so receive or retain if Debtor were liquidated under Chapter 7.  The evidence presented by Debtors addresses the return to creditors in a foreclosure sale, but does not address

---

[7]Because there is no evidence with respect to compliance with sections other than Section 1129(a)(8), the court does not reach issues regarding cramdown pursuant to 11 U.S.C. § 1129(b).

whether liquidation under Chapter 7 would yield a higher or lower return than a foreclosure sale. The court concludes that Debtor has failed to meet his burden of proof with respect to compliance with Section 1129(a)(7).

With respect to feasibility, the evidence is that Debtor has not had sufficient revenue from rental of the real property since several months prior to the inception of the instant case in order to make all the payments called for under the plan to secured creditors. Debtor's testimony indicates that he has had additional revenue for three months. However, there is no evidence to support a conclusion that Debtor will continue to obtain additional revenue. Also, there is no evidence as to the source of revenue to fund the payments due to priority tax creditors and unsecured creditors due one year after the effective date of the proposed plan. The court concludes that Debtor has failed to meet his burden of proof with respect to compliance with Section 1129(a)(11).

Based on the foregoing, the court will enter a separate Judgment denying confirmation.

Signed at Houston, Texas on March 5, 2009.

LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE